# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 East 42nd Street, Suite 4510　　　　　　　　　　　　　　　　　　　Telephone: (212) 317-1200
New York, New York 10165　　　　　　　　　　　　　　　　　　　　　Facsimile: (212) 317-1620

March 27, 2019

**VIA ECF**

Hon. Sarah Netburn
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

　　　　　　　　　　　　　　**Re:**　*Nacipucha et al. v. Villa Berulia Inc. et al.*
　　　　　　　　　　　　　　　　　Case No. 18-cv-2620-JGK-SB

Your Judge Netburn:

　　　　This office represents Plaintiff Angel Nacipucha ("Plaintiff") in the above-referenced matter. We submit this letter, together with Defendants' counsel, to respectfully request that the Court approve the settlement reached between Plaintiff and Defendants Villa Berulia, Inc., Stephen Varela, and Alexsandra Ivanac (the "Defendants," and together with Plaintiff, the "Settling Parties").

　　　　The Settling Parties have agreed to a negotiated Settlement Agreement (the "Agreement") after extensive discussions and a settlement conference before your Honor. The proposed Agreement is attached hereto as **Exhibit A.** We therefore ask the Court to approve the settlement, pursuant to Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015).

　　　　The Settling Parties represent to the Court that while the Plaintiff believes that the settlement amount is less than what he would be entitled to if he prevailed at trial, and Defendants believe the settlement amount is more than what Plaintiff would recover if he prevailed at trial, the settlement is nevertheless fair, as discussed herein.

**Background**

　　　　Plaintiff was employed by Defendants as a cook at the Italian restaurant owned by Defendants, located at 107 East 34th Street, NY, NY 10016.

　　　　Plaintiff was employed by Defendants from approximately July 2014 until on or about February 2018. From approximately July 2014 until on or about June 2017, Plaintiff Nacipucha worked as a cook on an alternating, evenly distributed schedule six days or seven days per week; the weeks he worked six days per week, Plaintiff Nacipucha worked as a cook from approximately 4:00 p.m. until on or about 10:00 p.m. Monday through Friday and 3:00 p.m. until on or about 10:00 p.m. on Saturday; the weeks he worked seven days per week, Plaintiff Nacipucha worked as a cook from approximately 12:00 p.m. until on or about 9:00 p.m. Monday through Friday, 3:00 p.m. until on or about 10:00 p.m. Saturday, and from approximately 3:00 p.m. until on or about

Hon. Sarah Netburn
March 27, 2019
Page 2 of 6

9:00 p.m. Sunday (typically 58 hours per week every other week). From approximately July 2017 until on or about September 2017, Plaintiff Nacipucha worked as a cook from approximately 12:00 p.m. until on or about 9:00 p.m., 5 days a week two weeks per month, and from approximately 4:00 p.m. until on or about 10:00 p.m., 5 days a week for the remaining weeks per month (typically 30 hours per week every other week and 45 hours per week every other week). From approximately October 2017 until on or about February 2018 Plaintiff Nacipucha worked as a cook on an alternating, evenly distributed schedule six days or seven days per week; the weeks he worked six days per week, Plaintiff Nacipucha worked as a cook from approximately 4:00 p.m. until on or about 10:00 p.m. Monday through Friday and 3:00 p.m. until on or about 10:00 p.m. on Saturday; the weeks he worked seven days per week, Plaintiff Nacipucha worked as a cook from approximately 12:00 p.m. until on or about 9:00 p.m. Monday through Friday, 3:00 p.m. until on or about 10:00 p.m. Saturday, and from approximately 3:00 p.m. until on or about 9:00 p.m. Sunday (typically 58 hours per week every other week).

From approximately July 2014 to February 2018, Defendants paid Plaintiff Nacipucha his wages in a combination of check and cash. From approximately July 2014 until on or about September 2014, Defendants paid Plaintiff Nacipucha a fixed salary of $800 per week by check only. From approximately September 2014 until on or about July 2017 and then from approximately September 2017 until on or about February 2018, Defendants paid Plaintiff Nacipucha a fixed salary of $1,181 per week when Plaintiff Nacipucha worked 7 days per week, and a fixed salary of $1,031 per week when Plaintiff Nacipucha worked 6 days per week, each by combination of check and cash. From approximately July 2017 until on or about September 2017, Defendants paid Plaintiff Nacipucha a fixed salary of $881 per week ($531 by check and $350 in cash).

Plaintiff was improperly paid a fixed weekly base salary by Defendants with additional payments for weekend shifts, and therefore brought this action seeking to recover unpaid minimum wages, overtime wages, spread of hours, liquidated damages, interest, attorneys' fees, and costs, pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, *et seq*. ("FLSA"), the New York Minimum Wage Act, N.Y. Lab. Law §§ 650, *et seq*., and overtime wage orders of the New York Commission of Labor codified at N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6.

The parties agreed on the settlement amount of $80,000 in order to avoid potentially significant and unanticipated burdens and expenses in establishing their respective positions through a trial.

**Settlement**

The Settling Parties have agreed to resolve this action for the total sum of $80,000.00 which will be paid as outlined in **Exhibit A**. Plaintiff alleges they are entitled to back wages of approximately $71,257.05. Plaintiff estimates that had he recovered in full for his claims, he would be entitled to approximately $169,534.60, which represents calculated actual damages, penalties, and interest, but excludes attorneys' fees and costs. Conversely, Defendants calculate that if Plaintiff prevailed at trial, he would recover only $13,475.00 in unpaid wages, and a total of $39,

981.88 in total damages, penalties and interest. The parties have agreed to settle this action for the total sum of $80,000. A copy of Plaintiff's damages chart, breaking down each amount sought from Defendants, is attached as "**Exhibit B**."

The full sum of the settlement amount will be paid to Plaintiff's attorneys, who will be responsible for distributing the settlement amount to the Plaintiff directly after deductions of counsel fees and costs, as described in the agreement

There is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." Lliguichuzhca v. Cinema 60, LLC, 948 F.Supp.2d 362, 365 (S.D.N.Y. 2013) (*quoting* Crabtree v. Volkert, Inc.*,* 2013 WL 593500, at *3 (S.D.Ala. Feb. 14, 2013)). "In considering whether a settlement is fair and reasonable, the principal question is 'whether the agreement reflects a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Id.* (*quoting* Le v. SITA Info. Networking Computing USA, Inc., 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008)). Courts consider factors including "(1) the Plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion." Wolinsky, 900 F.Supp.2d at 225 (*quoting* Medley v. Am. Cancer Soc., No. 10-cv-3214 (BSJ), 2010 WL 3000028, at *1 (S.D.N.Y. July 23, 2010)).

The agreement here is fair to the Plaintiff. Plaintiff has been represented by counsel throughout this lawsuit and has made an informed decision to settle the action prior to trial, without incurring further costs or encumbrance of trial. The Eighty Thousand Dollars ($80,000.00) that Plaintiff will be receiving accounts for any alleged unpaid minimum and overtime wages that they could have potentially recovered at trial, as well as attorneys' fees, and exceeds the amount recommend by this Court at a 12/20/18 settlement conference. Furthermore, the Agreement is the product of arm's-length bargaining between experienced counsel and there is no possibility of fraud or collusion.

The Agreement evenly allocates the settlement sum between Plaintiff's FLSA claims and NYLL claims. As a result of this bifurcated settlement, Plaintiff agrees to provide a general release in exchange for settlement of his state law claims. Courts in this district have consistently found that a general release pursuant to a bifurcated settlement is permissible under Cheeks. See e.g. Chowdhury v. Brioni Am., Inc., No. 16 CIV. 344 (HBP), 2017 WL 5953171 (S.D.N.Y. Nov. 29, 2017)(M.J. Pitman); Santos v. Yellowstone Properties, Inc., (PAE) 2016 WL 2757427 (S.D.N.Y. May 10, 2016) (Engelmayer, D.J.) (approving the submission of two settlement agreements, one resolving plaintiffs FLSA claims and the other resolving plaintiff's discrimination claims and containing a general release). Therefore, the presence of the general release does not render the settlement unfair or unreasonable under Cheeks.

**Plaintiff's Attorneys' Fees are Fair and Reasonable**

Hon. Sarah Netburn
March 27, 2019
Page 4 of 6

Under the settlement, Plaintiff's counsel will receive $26,666.67, one third of the settlement amount and slightly more than double their lodestar amount.

The amount provided to the Plaintiff's counsel under the settlement is fair and reasonable as it is consistent with the range of fees typically awarded in cases in this Circuit. *See* Castaneda v. My Belly's Playlist LLC, No. 15 Civ. 1324 (JCF) (S.D.N.Y. Aug. 17, 2015) (Francis, M.J.) (awarding the plaintiffs' attorneys a contingency fee of one-third to account for risks in litigation); *see also* Calle v. Elite Specialty Coatings Plus, Inc., 2014 U.S. Dist. LEXIS 164069 at *9 (E.D.N.Y. Nov. 19, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit"). In light of the nature of the issues herein, and the extensive negotiations necessary to reach the agreed-upon settlement, Plaintiffs' requested award is reasonable. *See* Alleyne v. Time Moving & Storage Inc., 264 F.R.D. at 60; *see also* McDaniel v. Cnty. of Schenectady, 595 F.3d 411, 417 (2d Cir. 2010).

Given Plaintiff's counsel's significant experience representing plaintiffs in New York City in wage and hour litigation, Plaintiffs' counsel was able to obtain a favorable pre-trial result due to the Settling Parties' cooperative exchange of information and frequent negotiations.

Attached hereto as **Exhibit C**, are Plaintiff's amended attorneys' time records. A brief biography of each attorney who performed billed work in this matter is as follows:

> Mr. Faillace is the Managing Member of Michael Faillace & Associates, P.C, and has been in practice since 1983. From 1983 to 2000, he was in-house Employment Counsel with International Business Machines Corporation (IBM). Mr. Faillace taught employment discrimination as an Adjunct Professor at Fordham University School of Law since 1992 and at Seton Hall University Law School from 1995 to 1998, and is a nationally-renowned speaker and writer on employment law. He also is the author of the ADA, Disability Law Deskbook: The Americans with Disabilities Act in the Workplace, published by Practicing Law Institute (PLI), and other employment law publications and presentations.

> Paul Hershan is an associate at Michael Faillace & Associates, P.C. He graduated from Fordham University School of Law in 2012. Following law school, he gained extensive trial and appellate litigation experience in the field of criminal law. Paul served as an Assistant District Attorney with the Bronx County District Attorney's Office for three years, then practiced primarily in the area of criminal defense before joining Michael Faillace & Associates, P.C. in April of 2018.

The requested attorneys' fees and costs in the parties' settlement are reasonable under the circumstances and Plaintiffs have agreed to these fees and costs by agreeing to the settlement amount. As a result, the fees should be approved.

**Conclusion**

Hon. Sarah Netburn
March 27, 2019
Page 5 of 6

      Plaintiff has been represented by counsel throughout this lawsuit, and Plaintiff's counsel has agreed to the settlement amount based on the approval of his client. Plaintiff's interests have thus been adequately safeguarded.

      In full consideration of the issues presented in *Cheeks,* we believe that the Settling Parties' agreement is fair and reasonable, and that the settlement should be approved. A Stipulation of Final Dismissal will be filed for so-ordering after execution of the agreement and upon receipt of confirmation from the Court that the settlement has been approved.

      Thank you for your consideration in this matter.

      Respectfully Submitted,

      /s/ Michael Faillace
      Michael Faillace, Esq.
      Michael Faillace & Associates, P.C.
      *Attorneys for Plaintiff*

cc:    Arthur Robb, Esq. (via ECF)
       *Attorney for Defendants*